IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JAMES HOWARD JENKINS, II | § | |
| VS. | § | CIVIL ACTION NO. 1:21cv595 |
| UNITED STATES OF AMERICA | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

James Howard Jenkins, II, proceeding *pro se*, formerly an inmate confined within the Bureau of Prisons ("BOP"), brings this lawsuit pursuant to the Federal Torts Claims Act, 28 U.S.C. § 2671, *et. seq.* (the "FTCA"), against the United States of America. The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Pending before the court is a motion to dismiss filed by the defendant.

Factual Allegations

Plaintiff was incarcerated at the Federal Correctional Complex at Beaumont, Texas ("FCC-Beaumont"), when Hurricane Harvey made landfall on August 26, 2017. Plaintiff complains that officials at FCC-Beaumont failed to evacuate the complex before the hurricane struck. Plaintiff states that as a result of the complex not being evacuated he experienced dehydration, excessive heat and hunger as a result of food shortages. He also states inmates were not provided with sufficient clean water and that the ventilation system was not functioning properly.

Plaintiff also complains of not receiving proper medical care. He states he was denied surgery and not provided proper medication for kidney stones.

The Motion to Dismiss

The defendant seeks dismissal of this lawsuit for lack of subject-matter jurisdiction. The defendant states the failure to evacuate claim is barred by the discretionary function exception to the FTCA. In support of this assertion, the defendant has provided a declaration from Dallas Jones, who was the acting complex warden at FCC-Beaumont during Hurricane Harvey.

Mr. Jones states that the decision regarding evacuation of the complex was based on policy considerations such as the obligation to keep society safe while transporting inmates, the logistical and personnel requirement of transporting inmates, traffic considerations, and the ability to maintain the assignment of inmates based upon their history of behavior and affiliations, as well as the need for certain inmates to be kept apart. Mr. Jones states that after considering these factors, he made the decision not to evacuate the complex.

The defendant also contends that plaintiff's medical care claim is barred by the independent contractor exception. The United States entered into a contract with League Medical Concepts, LLC ("LMC") to provide medical care at FCC-Beaumont. The defendant asserts LMC acts as an independent contractor while providing medical services.

Exhibit B to the motion to dismiss is a declaration from Dawn Payne, a Supervisory Contract Specialist at FCC-Beaumont. Ms. Payne states, in part, as follows:

> As part of my official duties, I am responsible for the procurement of property at FCC-Beaumont. Furthermore, I monitored a contract between the BOP and League Medical Concepts, LLC ("LMC"). Therefore I have personal knowledge of the contract and the nature of the relationship between LMC and the BOP. LMC's presence at FCC-Beaumont was strictly to provide medical care. True and correct copies of the relevant portions of the contract are attached as Attachments 1-4 to this declaration.
>
> An indefinite-delivery requirement contract was awarded to LMC on August 1, 2013. The underlying nature of this contract required LMC to provide all necessary health services at FCC-Beaumont, and coordinate and manage inmate inpatient/outpatient care in the community as necessary. That contract had a base year and four option years. Plaintiff's claims are related to care provided during and after Hurricane Harvey and they specify the claims arose between August 27, 2017, and September 14, 2017. For the purposes of this declaration, it is assumed the alleged dates of service encompass August 17, 2017, through September 14, 2017. The contract between LMC and the BOP was in its base year in June 2014, and it continued through July 31, 2014. The first two option years were executed in July 2014 and July 2015, respectively. The third option year was executed on July 12, 2016, and ran from August 1, 2016 to July 31, 2017. The fourth option year was executed on July 20, 2017, and ran from August 1, 2017, through July 31, 2018. Under the terms of the contract, the BOP was obligated to pay LMC a flat rate per day, per FCC-Beaumont inmate. The rate of the contract was calculated using a man-day rate (price per inmate, per day, based on the actual inmate count at FCC-Beaumont). The BOP did not provide to LMC employees traditional benefits often associated with an employment relationship. For instance, the BOP did not extend health benefits or retirement benefits to LMC employees. Nor did the BOP extend sick or annual

vacation to members of LMC staff. LMC employees were paid by LMC, and LMC was also responsible for withholding all applicable taxes.

In exchange for payment, LMC provided all medical, psychiatric, and dental services to all FCC-Beaumont inmates who required such services, and made all decisions concerning appropriate care for all such inmates. LMC provided comprehensive management, oversight, planning, equipment, maintenance, and repair programs. The BOP did not consider LMC, or any of its agents, employees, or subcontractors to be employees of the BOP or any other agency of the United States Government. Results to be obtained were within the Contractor's own unsupervised determination, and neither the BOP nor any of its agents or employees supervised any agents, employees or subcontractors of LMC. Under the contract there was a provision which specifically stated:

> Non-Personal Service Status. Award of this contract will result in a contractual arrangement only and shall not be construed as a personal appointment with the BOP . . . . Payments to the Contractor shall be based on the provision of an end product or the accomplishment of a specific task. Results to be obtained are within the contractor's own unsupervised determination. The Contractor will not be subject to Government supervision but its efforts will be monitored for quality assurance.
>
> Pursuant to FAR 37.401, the resulting contract shall be a nonpersonal health care services contract, under which the Contractor is an independent contractor. The Government may evaluate the quality of professional and administrative services provided, but retains no control over the medical, professional aspects of services rendered (e.g., professional judgments, diagnosis for specific medical treatment).

Under the contract, LMC was mandated to provide the same level of care available in current BOP institutions. LMC was also expected to "furnish all inmates, who have legitimate medical need, necessary devices and supplies (e.g., eyeglasses, hearing aids, special shoes, canes, etc.)." Because medical, psychiatric, and dental care require a high degree of education and skill, LMC was required to ensure that its employees have primary source verified credentials (i.e., professional education, residency, licensure, etc.).

The BOP did not dictate the manner by which LMC provided the appropriate level and quality of services and care so long as LMC complied with comprehensive staffing plans and operational procedures it submitted to the BOP in order to successfully obtain the contract. Determinations regarding the nature and extent of care to be provided to FCC-Beaumont inmates were left to the clinical judgment of LMC's health care professionals. The BOP did not retain control over the medical, professional aspects of services rendered (e.g., professional judgments, diagnosis for specific medical treatment).

The BOP initially provided the medical equipment necessary for LMC to provide medical services to FCC-Beaumont inmates. LMC was responsible for all maintenance and upkeep of the equipment. Additionally, should any equipment need to be replaced, LMC was responsible for procurement and purchase of new

equipment. Replacement equipment provided by LMC at LMC's expense remains the property of LMC.

## Standard of Review

A district court has the authority to dismiss an action for lack of subject-matter jurisdiction based on: (1) the complaint alone, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). The court generally can decide disputed issues of material fact in order to determine whether or not it has jurisdiction. *Montez v. Department of the Navy*, 392 F.3d 147, 149 (3rd Cir. 2004). However, in the context of an FTCA action, the court should not resolve disputed issues that are dispositive of both subject-matter jurisdiction and the merits of the FTCA claim.

## Analysis

As a general rule, the United States enjoys sovereign immunity from suit unless it has specifically waived immunity. *See Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). The FTCA provides a limited waiver of sovereign immunity from suit for those claims regarding "injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). Courts must strictly construe waivers of the government's sovereign immunity, and must resolve all ambiguities in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Chapa v. United States Department of Justice*, 339 F.3d 388, 390 (5th Cir. 2003).

*Failure to Evacuate*

Under the FTCA, the United States has consented to be sued for "injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). This limited waiver of sovereign immunity is jurisdictional in nature so that if the action is barred, the court lacks subject-matter jurisdiction over the plaintiff's claim. "Courts must strictly construe all waivers of the federal

government's sovereign immunity and must resolve all ambiguities in favor of the sovereign." *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998).

There is, however, a "discretionary function" exception to the waiver of immunity. The discretionary function exception provides that the waiver does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception withdraws the FTCA's waiver of sovereign immunity in situations in which, even though a government employee's action may been actionable under state tort law, those actions were within the discretion committed to that employee under federal statute, regulation, or policy. *Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010).

The Supreme Court has developed a two-part test for determining whether agency conduct qualifies as a discretionary function or duty. *United States v. Gaubert*, 499 U.S. 315, 320-23 (1991). Under the first prong, the conduct must be discretionary in nature or a "matter of choice for the acting employee." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Moreover, it is the "nature of the conduct, rather than the status of the actor," that determines whether the exception applies. *Gaubert*, 499 U.S. at 322 (citations omitted). "If a statute, regulation, or policy leaves it to the federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary." *Spotts*, 613 F.3d at 567 (citing *Gaubert*, 499 U.S. at 329). However, the discretionary function does not apply if a federal statute, regulation or policy prescribes a course of action for an employee to follow because the employee has no rightful option but to follow the statute, regulation or policy. *Gaubert*, 499 U.S. at 322.

Under the second prong of the test, the court "must still decide whether 'the judgment is of the kind that the discretionary function exception was designed to shield.'" *Id*. at 568 (quoting *Gaubert*, 499 U.S. at 322-23 (citations omitted). "Because the purpose of the exception is to 'prevent judicial "second guessing" of legislative and administrative decisions grounded in social,

5

economic, and political policy through the medium of an action in tort,' when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 322-23 (citations omitted). Accordingly, "[w]hen established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

Title 18 U.S.C. § 4042(a), requires the BOP "to provide for the safekeeping, care, and subsistence of all federal prisoners, but does not indicate the manner in which the duties must be fulfilled." *Spotts*, 613 F.3d at 567. As Section 4042(a) does not prescribe a specific course of action, the BOP has discretion to decide how best to fulfill its duty. *Huff v. Neal*, 555 F. App'x 289, 298 (5th Cir. 2014). While Section 4042(a) "mandates that the BOP ensure the safekeeping of inmates, the Supreme Court has observed that a prison's internal security is normally left to the discretion of prison administrators." *Id*. (citing *Whitley v. Abers*, 475 U.S. 312, 321-22 (1986)). Neither Section 4042(a)'s mandate to protect prisoners nor the constitutional prohibition against cruel and unusual punishment defines a non-discretionary course of action specific enough to render the discretionary function inapplicable." *Campillo v. United States Penitentiary Beaumont*, 203 F. App'x 555, 557 (5th Cir. 2006) (citations omitted). The first prong of the two-part test is therefore satisfied.

This claim is similar to the claim asserted in *Spotts*. In that case, inmates challenged the failure to evacuate FCC-Beaumont in connection with Hurricane Rita. In that case, a BOP regional director filed a declaration similar to the declaration provided by Mr. Jones in this case. The United States Court of Appeals for the Fifth Circuit concluded that the decision whether or not to evacuate involved the type of public policy consideration that the discretionary function exception shielded from judicial scrutiny. *Spotts*, 613 F.3d at 572. The court stated "it is clear that the health, safety, financial, and other feasibility concerns implicated by the evacuation decision render[ed] that decision susceptible to policy analysis." *Id*.

The decision regarding evacuation in this case implicated the same health, safety, financial and feasibility concerns that were in play in *Spotts*. As a result, the decision made by Mr. Jones in this case was susceptible to policy considerations and the type of decision the discretionary function exception was designed to shield. The second-prong of the *Gaubert* test is therefore satisfied in this case.

For the reasons set forth above, both prongs of the *Gaubet* test are satisfied in this case. The discretionary function exception to the FTCA therefore bars consideration of plaintiff's claim regarding evacuation.

*Medical Care*

Another exception to liability under the FTCA provides that the United States is not liable under the FTCA for actions taken by independent contractors or their employees. *United States v. Orleans*, 425 U.S. 807, 813-14 (1976); *Broussard v. United States*, 989 F.2d 171, 174 (5th Cir. 1993). The critical factor in determining whether an individual is an employee of the government or an independent contractor is the power of the government to control the detailed physical performance of the individual. *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998).

However, while control of the detailed physical performance may be the most critical factor in identifying whether an individual is an employee, it is not necessarily the only factor. *Broussard*, 989 F.2d at 175. If control were the only factor, no professional who exercised professional judgment could be an employee under the FTCA. *Id*. The following additional factors, drawn from the Restatement (Second) of Agency § 220, may be considered: (1) the extent of control which, by the agreement, the master may exercise over the details of the work; (2) whether or not the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the person is employed; (7) the method of payment,

whether by the time or by the job; (8) whether or not the work is part of the regular business of the employer; (9) whether or not the parties believe they are creating the relation of master and servant and (10) whether the principal is or is not in business. *Linkous*, 142 F.3d at 276.

Ms. Payne's declaration demonstrates that the most critical factor here–whether the BOP had the power to control the detailed performance of LMC and its personnel–weighs strongly in favor of the defendant. The contract did not permit such control.

With respect to the remaining factors, the first factor weighs in favor of the defendant as the BOP had no control over the details of the work performed pursuant to the contract. The second factor also weighs in favor of the defendant. LMC and its employees were engaged in providing health care, a distinct occupation.

With respect to the third factor, there is no evidence in the record concerning whether the work performed under the contract was usually done under the direction of the employer or by a specialist without supervision. The fourth factor weighs in favor of the defendant as the work being performed required skill in a particular occupation.

The fifth factor weighs in favor of the plaintiff. BOP supplied the place where the work was performed and the initial instrumentalities and tools used to perform the work. With respect to the sixth factor, while the contract between BOP and LMC could be renewed for several years, it is not clear how long the employee relationship was between personnel employed by LMC. It is similarly difficult to determine which party the seventh factor favors.

With respect to the eighth factor, the work performed by LMC and its personnel was not a part of the principal regular business of the BOP. The ninth factor weighs in favor of the defendant as the parties to the contact did not believe they were creating the relation of master and servant. Instead, the contract provided that LMC and its employees were to be independent contractors. Finally, the tenth factor weighs in favor of he defendant as the BOP is not in business.

In this case, the critical factor weighs strongly in favor the defendant. Moreover, six of the additional factors weigh in favor of the defendant. As a result, it must be concluded that the acts and

omissions complained of in this lawsuit were performed by an independent contractor. As the FTCA's waiver of sovereign immunity does not extend to acts and omissions of independent contractors, the court lacks subject-matter jurisdiction over the claim regarding medical care.

## Conclusion

As explained above, plaintiff's claims are barred by exceptions to the waiver of sovereign immunity in the FTCA. The court therefore lacks-subject matter jurisdiction over these claims and the motion to dismiss should be granted.

## Recommendation

The motion to dismiss (doc no. 9) should be granted.

## Objections

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of fact, conclusions of law, and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of fact, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggried party from the entitlement to *de novo* review by the district court of the proposed findings, conclusions, and recommendations, and from appellate review of factual findings and legal conclusions accepted by the district court except on ground of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

SIGNED this 10th day of April, 2023.

_____
Zack Hawthorn
United States Magistrate Judge